UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO. 1:02CR 22 |
| ) | |
| Plaintiff, ) | JUDGE DONALD C. NUGENT |
| ) | |
| v. ) | |
| ) | |
| MARTIN T. WILLIAMS ) | MEMORANDUM OPINION |
| ) | AND ORDER |
| Defendant. ) | |

This matter comes before the Court on Remand from the Sixth Circuit United States Court of Appeals. Following a jury trial, Mr. Williams was convicted on one count of Conspiracy to Commit a Crime Against the United States (Health Care Fraud); three counts of Aiding and Abetting Wire Fraud; and, one count of Aiding and Abetting Health Care Fraud. He was sentenced to 12 months of probation, and ordered to pay restitution in the amount of $822,459.21. Mr. Williams appealed his conviction, as well as the amount of restitution that he was ordered to pay. The Court of Appeals affirmed his conviction, vacated the restitution award and remanded the case to this district court to "properly rule on Williams's up-coding argument under Rule 32(i)(3)(B) and, after having done so, issue an appropriate order of restitution." *United States v. Williams*, Case No. 09-3521 (Sixth Cir. July 15, 2010).

The Court of Appeals found that the district court had violated Fed. R. Crim. P. 32(i)(3)(B) by failing to address Mr. Williams' objections to the way the restitution was calculated in the presentence report. More specifically, the Court of Appeals noted that the

district court failed to rule on Mr. Williams' argument that:

> In paragraph 12 of the PS[R], the government states that Dr. Rohira would bill for half hour psychotherapy sessions at a rate of $65.00 when actually he performed services worth $40.00. In paragraph 14, the government then calculates this loss from up-coding as 60 patients at $85.00 per hour for a total of $984,000. The actual loss to the victims for the up-coding is the difference between the actual service provided and the incorrect charged amount. Thus, the victims were damaged in an amount of $25.00 for the $85.00, the correct value is an amount $289,411.65. It is unclear how this amount was dispersed throughout the victim impact calculations, but it does demonstrate that the amount should be less than stated in the PS[R].

(ECF # 230, pg.4).[1]

Both parties acknowledge that the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. §§ 3663A-3664, applies in the present case. The MVRA mandates the imposition of restitution as part of the sentence of the defendant, and requires the court to "order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." *Id.* § 3664(f)(1)(A). The government bears the burden of proving the amount of each victim's loss by a preponderance of the evidence. *Id.* § 3664(e).

The court has an obligation under the MVRA to obtain information from the Probation Office about the victim's losses so that it may order appropriate restitution. Id. § 3664(a), (f)(1)(A). In calculating the restitution amount the Presentence Investigation Report ("PSR") suggested that restitution should be ordered in the amount of $822,405.21. When describing the

---

[1] There was another argument advanced in Mr. Williams' Sentencing Memorandum, which also served as an objection to the restitution calculation in the PSR. Namely, Mr. Williams argued that because the victim loss could not be reasonably determined, it should calculate the restitution based on the amount he gained from the criminal activity. In this case, he argued that he had a zero gain, and, therefore, should not be assigned any restitution obligation. (ECF #230, pg. 4).

2

losses suffered by the victims the PSR reported that

> According to the Government, the loss from fraudulent billing for Sharonne Szyrez' services was $400,000.00; the loss from up-coding of services (60 patients a week at a $85.00 per hour billing rate) = $984,000.00; and the billing of no-shows (50 no shows per month @ an average rate of $75.00 per billing for 10 years = $450,000.00. The total loss is computed at $822,405.21.

The PSR then goes on to itemize several agencies/organizations and their respective losses, totaling $822,405.21. There is no indication in the PSR how the amounts attributed to each agency/organization were calculated, or why they do not align with the other amounts claimed by the government in its description of the losses.

Mr. Williams' argument that the amount of restitution calculated based on the up-coding of services was miscalculated is correct if the assumed $85.00 per hour billing rate was the total amount billed, and not the difference between the appropriate charge and the actual charge billed. However, it is impossible to calculate the proper amount of restitution from the information contained in the PSR. The PSR offers conflicting amounts attributable to the up-coding of services, attributes additional losses to fraudulent billing and the billing of no-shows without including those amounts in the computation of total loss, and assigns specific loss amounts to each of six victims without addressing how those losses were calculated.

Because it is clear that there is some merit to Mr. Williams' objections to the amount of restitution originally ordered, and because it is impossible to determine the proper amount of restitution based on the information provided in the PSR, the Court held an evidentiary hearing to determine the appropriate amount of restitution for each victim, and to determine how much of the proven losses should be allocated to Mr. Williams.

At the hearing, evidence was presented to show that there were six victims who claimed

3

to suffer losses from the conspiracy at issue in this case: Advance Med, Aetna, United Health Group, Medical Mutual of Ohio, Firelands Regional Medical Center, and Anthem Blue Cross Blue Shield. The government presented evidence showing that Advance Med suffered losses in the amount of $178,957.46 through December of 1996, the relevant time period for Mr. Williams' conviction. Further, evidence was presented showing that Advance Med had received $400,000 in a Qui Tam Settlement with Mr. Williams' co-defendant, Dr. Rohira, which was applied to settle the claim for losses between 1997 and 2003. As there is no way to determine which, if any, of these funds was intended to settle claims for losses prior to December of 1996, and which, if any, were intended to settle claims for losses post 1996, the Court finds that Advance Med has not proven by a preponderance of the evidence that losses remain from the relevant time period covered by Mr. Williams' convictions. The Court also finds that Advance Med has agreed to full settlement of its claim for losses in the amount of $400,000, which was settled by the Qui Tam Settlement with Dr. Rohira.[2]

In addition to the $400,000 from the Qui Tam Settlement, Advance Med has also received $3,406.54 from restitution payments made by Mr. Williams. Because, Advance Med agreed to accept the $400,000 in full settlement of its losses, and because in cases where the United States is a victim, "the court shall ensure that all other victims receive full restitution before the United States receives any restitution," 18 U.S.C. § 3664(I), Advance Med should reimburse the victims fund $3,406.54, so that this money can be re-apportioned among the

---

[2] The government agrees that the $400,000 received by Advance Med from Dr. Rohira fully satisfied the restitution owed in this case.

private victims in this action.[3]

At the evidentiary hearing two of the private victims put on testimony detailing the total amount they had paid out to the Defendant's company during the course of the conspiracy. United Health Group paid out $47,105.71, and Aetna paid out $52,781.00. Neither company offered any evidence, however, as to how much of these amounts, if any, was due to the fraud and up-coding that was the basis of Mr. Williams' conviction. As there has been absolutely no evidence of any actual loss suffered by these entities, let alone evidence sufficient to satisfy the preponderance of the evidence standard for the calculation of restitution amounts, the Court finds that no restitution can be ordered for these alleged victims.[4]

The remaining victims each presented evidence of a specific loss amount, or have sought an amount that was agreed to by the Defendant. Medical Mutual of Ohio presented evidence of a loss in the amount of $343,928.86; Anthem Blue Cross and Blue Shield has an agreed loss of $6,685.00; and, Firelands Regional Medical Center has an agreed loss of $80.70. The total amount of restitution owing as of the date of the evidentiary hearing,[5] therefore, is $350,694.56.

When ordering restitution in a case with multiple defendants who all contributed to the loss, "the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's

---

[3] Monies received through a QuiTam action are for the benefit of the government only, therefore, the $400,000 received through the QuiTam Settlement cannot be re-distributed amongst the private victims regardless of the general mandate set forth in 28 U.S.C. § 3664(I).

[4] United Health Care has already received $725.44 from the restitution previously paid by Mr. Williams, while Aetna has received $811.30.

[5] This amount does not include restitution owed to Advance Med, but already satisfied by other parties.

5

loss and economic circumstances of each defendant." *Id.* § 3664(h). The government has taken the position, over the course of this litigation, that Dr. Rohira "controlled every aspect of his practice, including the supervision of the other two individuals," including Mr. Williams. Mr. Williams has already paid $10,352.88 towards his portion of the restitution, and has put another $3,000 in escrow for payment of restitution pending the outcome of the restitution hearing. He also owes several thousand dollars in attorney fees. According to the updated PSR, currently his necessary living expenses also exceed his total monthly income.[6] Further, there was evidence presented at trial and at the evidentiary hearing that would support a finding that Mr. Williams did not profit from the conspiracy in the same manner as the other co-defendants. The Court, therefore, finds, when considering the relative culpability of each of the co-defendants in this case, and the amount gained by each co-defendant from the conspiracy, that Mr. Williams will have contributed his fair share toward the $350,694.56 total restitution amount once he pays the $3000 he currently has set aside in escrow to the victims' fund. This will bring his total share of restitution to $13, 352.88. Mr. Williams is also responsible for the payment of his outstanding attorney fees, which have been reported to be $6,341.19. IT IS SO ORDERED.

*(signature)*
DONALD C. NUGENT
United States District Judge

DATED: March 15, 2011

---

[6] The Court is not permitted to take Mr. Williams ability to pay into account in determining the restitution amount, but it is permitted to consider this factor when determining how to apportion the restitution among defendants.